Mark Stanton CURTIS, Appellee,

v.

CITY OF DES MOINES, Iowa; Daniel Dusenberry; Charles R. Wolf, Defendants,

Keith Morris; Denise Morris, Appellants.

No. 92–2719.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided May 28, 1993.

Rehearing Denied July 2, 1993.

Oral Argument for the appellants was waived.

George S. Eichorn, Des Moines, Iowa, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

In 1988, Des Moines police arrested Mark Stanton Curtis for the rape of Keith and Denise Morris' (the Morrises') daughter. The police brought him to the Des Moines jail, where two officers beat him. Curtis filed this § 1983 action against the two officers and the City of Des Moines (the City). Curtis prevailed, but not before the Morrises prevailed against him in a separate Iowa state court civil assault and battery suit. The Morrises' and Curtis' attorneys have subsequently battled over who is entitled to execute on Curtis' federal court judgment. The district court ruled in favor of Curtis' attorneys. The Morrises appeal. We affirm in part and reverse in part.

## I.

On March 4, 1988, Des Moines police arrested Curtis for the rape of the Morrises' daughter. Curtis was taken to the Des Moines jail, where, while being processed, Des Moines police officers Daniel Dusenberry and Charles Wolf physically beat him.

On May 11, 1989, Curtis brought this action under 42 U.S.C. § 1983 in the United States District Court for the Southern District of Iowa, Central Division [1] (the district court) against the officers and the City of Des Moines. Attorney George Eichorn represents Curtis in the case. On June 5, 1989, Eichorn and Curtis executed Eichorn's fee agreement, in which, if Curtis prevails, he agrees to pay Eichorn a contingency fee or the full amount of any attorney's fees awarded, whichever is larger. Eichorn subsequently brought in William Kutmus as co-counsel.

On November 1, 1989, the Morrises filed suit against Curtis in the Iowa District Court for Polk County (the Iowa state court), seeking damages for the assault and battery of their daughter. Eichorn and Kutmus also represented Curtis in this proceeding based on an oral fee agreement. The Morrises prevailed, and, on January 9, 1991, the Iowa state court entered judgment against Curtis in the amount of $80,000.[2]

On January 31, 1992, the district court below entered judgment against officers Dusenberry and Wolf in the amount of $11,000, plus interest from May 11, 1989, and reasonable attorneys' fees and expenses. Curtis thereafter agreed to drop his suit against the City in exchange for Dusenberry's and Wolf's promises to pay attorneys' fees of $49,000 and costs of $2,298.95, in addition to the $11,000 underlying judgment.

The case thereafter gets convoluted and confusing. On February 7, 1992, the Morrises filed two documents with the clerk of the Iowa state court: (1) Plaintiff's Order to Levy, and (2) Notice to Principal Defendant of Garnishment. Through these documents, the Morrises sought to garnish Curtis' district court judgment against Dusenberry and Wolf, including all interest, attorneys' fees and expenses awarded. There was no proof of service attached to either document.

On February 11, 1992, at approximately 4:30 p.m., Curtis' attorneys filed with the clerk of the district court below a Notice of Attorney's Lien [3] and a Motion for Attorneys

---

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa, Central Division.

2. The State of Iowa had successfully prosecuted Curtis criminally for the rape.

3. Curtis' attorneys contend they filed their Motion for Attorneys Fees at 1:10 p.m. on February

Fees, to which they attached an Affidavit of attorneys fees and Curtis' Contract for Legal Services. Curtis served these documents on the attorneys for the district court party defendants.

Approximately twenty minutes later and in the same court, the Morrises filed a Notice of Filing Lien, to which they attached a copy of their Iowa state court judgment against Curtis, as well as copies of the two execution documents they filed four days earlier in the Iowa state court. The Morrises did not attach proof of service, and no notice was provided to either Curtis or the defendants in the district court case.

On February 12, 1992, the Morrises sought a General Execution from the clerk of the Iowa state court on their judgment against Curtis. The Iowa state court issued the execution the next day.

On February 13, 1992, Curtis filed in the Iowa state court a Confession of Judgment for $16,861.80 in favor of Eichhorn and Kutmus, reflecting what Eichhorn and Kutmus have billed Curtis for defending him in the Morrises' Iowa state court suit. Eichhorn and Kutmus also sought a Docket Levy in the lower district court proceeding on this day.

On February 19, 1992, and acting pursuant to the Order to Levy and General Execution documents the Morrises filed in the Iowa state court case, the Polk County Sheriff's office served a Notice of Garnishment and Interrogatories on counsel for Dusenberry and Wolf. Neither Curtis nor his attorneys were served with notice, nor was a levy entered on the district court's docket.

On February 21, 1992, the Polk County Sheriff's office served the clerk of the district court below with Eichhorn and Kutmus' Iowa state court order to levy, for which the clerk that day entered a Docket Levy in this case. Service of the Notice of Garnishment was obtained on March 4, 1992.

On February 24, 1992, Eichhorn and Kutmus filed a Motion to Determine Right to Award of Attorneys Fees in the district court, in response to which the court below ordered that a hearing be held.

On March 5, 1992, the Morrises filed a Notice of Filing Judgment in the district court to which they attached a copy of the Morrises' Iowa state court judgment against Curtis. They did not attach any proof of service.

On March 11, 1992, the Morrises filed a revised Plaintiff's Order to Levy and a revised Notice to Principal Defendant of Garnishment for $60,000 in the Iowa state court case. The Plaintiff's Order to Levy asked the court to levy on the $11,000 judgment and $49,000 attorneys' fee award in the district court below. The Morrises served both of these documents on Curtis' counsel.

On March 12, 1992, the Lee County Sheriff's office returned the Notice of Garnishment document it had served on both Curtis and the clerk of the district court below.

On March 17, 1992, the district court conducted a hearing on the matter. On that day, the Morrises filed a Notice of Filing of Plaintiff's Order to Levy in the district court below. The Morrises also filed another Order to Levy in the state proceeding by which they sought the sheriff on a property garnishment to levy on the judgment and attorneys' fees in the district court action. They also filed another Notice to Principal Defendant of Garnishment. Although both documents were served on Curtis' attorneys, they were not served on Curtis.

On June 29, 1992, the district court ruled that Curtis' attorneys were entitled to the proceeds from the district court case. The defendants in this case subsequently paid the judgment to Curtis' attorneys, and on July 17, 1992, Curtis' attorneys filed a Satisfaction of Judgment.

The Morrises filed this timely appeal, arguing their garnishment of the proceeds from Curtis' successful § 1983 action in the district court below was prior and superior to those filed by Curtis and his attorneys.

Curtis has filed a motion to dismiss this appeal on the grounds that, under Fed. R.Civ.P. 12(b)(1)–(2), and (6), and Fed. R.App.P. 1(b), the Morrises are not parties to

11, 1992, and their Notice of Attorney's Lien at

4:27 p.m. that day.

this action, but simply creditors who have no rights to appeal. This motion goes to the larger issue concerning whether the Morrises have standing before this court and, consequently, we consider it first.

## II. Standing

Curtis asserts the Morrises lack standing to bring their appeal before this court. He claims the Morrises, by way of their Iowa state court judgment against him, are simply creditors who were never parties to this action, as required by Fed.R.Civ.P. 10(a), never sought to intervene, pursuant to Fed.R.Civ.P. 24, and have not followed Fed.R.App.P. 39 [4] or 43 and are not otherwise proper parties on appeal.

Directing our attention to the Supreme Court's ruling in *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the Morrises argue Curtis has waived any standing objection by not broaching the issue with the district court. The Morrises claim the district court, in effect, granted them standing by hearing and accepting their arguments below, and including their names in the style of the court's final order denying their claims.

■ Standing is a fundamental element of federal court jurisdiction, without which federal courts are powerless to act. *See Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). Only a properly named party may initiate an appeal, *Bender v. Williamsport Area School District*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), and those who neither intervene or otherwise attain party status may not appeal a district court's judgment. *Hispanic Soc. of New York City Police Dep't, Inc. v. New York City Police Dep't*, 806 F.2d 1147, 1152 (2nd Cir.1986), *aff'd sub nom. Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988).

■ There is, however, a recognized exception to this rule, where a person has " 'an interest in the cause litigated and participated in the proceedings actively enough to

make him privy to the record ... [even though] he was not named in the complaint and did not intervene.' " *Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir.1987) (quoting 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.06, at 3–23 (2d ed. 1987)). *See also United States v. International Brotherhood of Teamsters*, 931 F.2d 177, 183–84 (2d Cir.1991) (citing *Hispanic*, 806 F.2d at 1152) ("[a] nonparty may appeal 'when the nonparty has an interest that is affected by the trial court's judgment.' ").

In our view, the Morrises fit under the exception. Although they were not a party, nor sought to intervene, they actively participated in post-trial executions on the judgment, *see Kenny*, 820 F.2d at 668, they made appearances to contest the issues they raise here on appeal and the district court treated them as parties by accepting their briefs, *see Citibank International v. Collier–Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir.1987), and they have an interest—the proceeds in the instant § 1983 action—which has been affected by the lower court's entry of judgment against them. *See Teamsters*, 931 F.2d at 183–84.

Accordingly, the Morrises have standing to bring this appeal, and Curtis' motion to dismiss is denied.

## III. The Proceeds of the § 1983 Action

### A. Attorneys' Fees of $49,000

■ The Morrises next argue the $49,000 awarded as § 1988 attorneys' fees in this § 1983 action is the property of Curtis and not his attorneys, citing as its support the Supreme Court's decision in *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) and our ruling in *United States v. McPeck*, 910 F.2d 509 (8th Cir.1990). They then maintain the district court erred in not ruling they were entitled to both these § 1988 attorneys' fees and the underlying $11,000 awarded Curtis because their garnishment was prior and superior to Curtis'.

Curtis' attorneys argue they are entitled to the § 1988 attorneys' fees because to rule

---

4. We do not understand the relevance of Fed.R.App.P. 39, which pertains to costs on appeal,

to Curtis' argument here.

otherwise runs afoul of the purpose of the statute: to provide a private attorney general mechanism that encourages attorneys to prosecute constitutional violations by promising them attorneys' fees if they prevail. They also note that under Iowa state law they have a valid fee agreement and assignment of attorneys' fees. They maintain their lien was prior in time because the Morrises failed to properly follow the procedures of Iowa lien law.

The clear Congressional intent and purpose of § 1988 was to encourage attorneys to prosecute constitutional violations. *See Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 1682, 109 L.Ed.2d 74 (1990); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1976). This is precisely what Curtis' attorneys did in prosecuting Curtis' civil rights claims against the police officials. Whatever priority the Morrises have with respect to their lien on the judgment in this case has no effect on the award of § 1988 fees. Accordingly, the district court properly ruled that Eichorn and Kutmus are entitled to their fees.

**B. The Judgment Proceeds of $11,000**

Entitlement to the proceeds of the underlying § 1983 judgment of $11,000 takes us from consideration of federal law to Iowa state lien law.

■ Iowa Code Ann. § 626.22 (West 1950) governs the levying of a court judgment:

The levy upon a judgment shall be made by entering upon the judgment docket a memorandum of such fact, giving the names of the parties plaintiff and defendant, the court from which the execution issued, and the date and hour of such entry, which shall be signed by the officer serving the execution, and a return made on the execution of [the officer's] doings in the premises.

The use of language "shall be made" and "shall be signed" here indicates both that § 626.22 is designed to be the exclusive means under Iowa law for levying on a judgment, and the procedures set forth therein must be completed before a valid levy may issue.

On February 11, 1992, the Morrises filed a Notice of Filing Lien in the district court below in which they sought a docket levy on the judgment entered against the defendants. The information contained in their notice fully complied with the statutory requirements of § 626.22. For reasons that are not clear to us, their docket levy was never entered.

■ In its order entered June 29, 1992, the district court ruled the Morrises' attempts to effectuate a lien were not perfected because they failed to provide notice to Curtis or his attorneys of "an execution on February 13" they obtained and "an order to garnish the federal court judgment on February 19." App. 53–54. If the reason the docket levy was never entered is because the Morrises failed to give notice, *and*, but for this failure, the Morrises would have had a docket levy entered before the one Eichorn and Kutmus filed, then, in our opinion, the district court erred. The district court erred because Curtis' counsel knew about the filing. Counsel for Curtis at oral argument in this appeal conceded as much. And under our reading of Iowa law, such notice suffices for purposes of effectuating a lien. *See Edwards v. Tracy*, 203 Iowa 1083, 212 N.W. 317, 319 (1927); *see also Struebin v. State of Illinois*, 383 N.W.2d 516, 518 (Iowa 1986) (interpreting Iowa's garnishment notice statute as "a type of service reasonably designed to insure that the principal defendant had actual knowledge of the garnishment proceeding.").

Thus, in light of the actual notice Curtis' attorneys received, the Morrises have a superior right to the proceeds of the $11,000 judgment. We rule the Morrises' claim to a lien on the judgment must be honored as against the claims of attorneys Kutmus and Eichorn. Because Kutmus and Eichhorn have already received the § 1983 judgment proceeds, they owe the Morrises $11,000 with interest.

Accordingly, we affirm in part and reverse in part and remand for an entry of judgment consistent with this opinion.

Each party shall bear its own costs.